LUIS A. ARCHILLA LAUGIER y JOSÉ ENRIQUE GELPÍ, peticionarios, *v.* REXFORD G. TUGWELL, GOBERNADOR DE PUERTO RICO, y GUSTAVO CRUZADO SILVA y ERNESTO MIERES CALIMANO, querellados.

Núm. 399.—*Sometido:* Abril 10, 1944. *Resuelto:* Abril 20, 1944.

414

*Luis A. Archilla Laugier, pro se,* y *J. J. Ortiz Alibrán,* abogados de los peticionarios; *Hon. Procurador General Interino Jesús A. González* y *Fernando B. Fornarís, Procurador General Auxiliar,* abogados del Gobernador de Puerto Rico, querellado; los otros querellados no comparecieron.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Luis A. Archilla Laugier y José Enrique Gelpí presentaron en este Tribunal una petición interesando que expidamos un auto perentorio de *mandamus* dirigido al Hon. Rexford G. Tugwell, Gobernador de Puerto Rico, ordenándole que inmediatamente proceda, de acuerdo con la ley, a nombrarlos miembro propietario y miembro sustituto, respectivamente, de la Junta Insular de Elecciones en representación del Partido Liberal Puertorriqueño. Los fundamentos en que descansa la petición pueden sintetizarse así: que los peticionarios son electores capacitados de esta Isla, que están afiliados al Partido Liberal Puertorriqueño, el cual es un partido principal de Puerto Rico; que con motivo de la renuncia del representante de dicho partido político en la Junta Insular de Elecciones presentada con anterioridad al 12 de marzo de 1944, el organismo directivo central del Partido Liberal Puertorriqueño, o sea la junta central de dicho Partido, en reunión celebrada el 12 de marzo de 1944, por unanimidad acordó solicitar del Gobernador de Puerto Rico que nombrase a los aquí peticionarios para los referidos cargos; que el 30 de marzo de 1944 fué entregada al Gobernador de Puerto Rico la petición oficial del aludido Partido, certificándole dicho acuerdo y solicitando el nombramiento de los peticionarios para los referidos cargos, y que el mismo día el Gobernador nombró para ocuparlos, en representación del Partido Liberal Puertorriqueño, a Gustavo Cruzado Silva y a Ernesto Mieres Calimano, quienes no fueron recomendados por el organismo directivo. central de dicho Partido; que el ameri-

tado acuerdo de 12 de marzo de 1944 no ha sido modificado o revocado en forma alguna, alegando además los peticionarios por información y creencia, que el Gobernador nombró a Gustavo Cruzado Silva y a Ernesto Mieres Calimano por petición de José Ramírez Santibáñez, Presidente del Partido Liberal Puertorriqueño, sin que tal petición haya sido sometida a ni discutida ni aprobada por el organismo central del Partido; que la petición aludida fué hecha al Gobernador por José Ramírez Santibáñez con anterioridad a la notificación oficial que envió al organismo central, y que la referida notificación oficial fué enviada al Gobernador antes de que éste extendiera los nombramientos de Gustavo Cruzado Silva y Ernesto Mieres Calimano; que dichos nombramientos son nulos por ser deber ministerial del Gobernador nombrar a las personas designadas por el organismo directivo central del Partido Liberal Puertorriqueño; que en la fecha en que se radicó la petición de los demandados, Gustavo Cruzado Silva y Ernesto Mieres Calimano no habían tomado posesión de los referidos cargos pero se proponían hacerlo. Como incidental al remedio de mandamus solicitaron de esta Corte los peticionarios que en auxilio de su jurisdicción, se prohibiese a los demandados Gustavo Cruzado Silva y Ernesto Mieres Calimano que tomasen posesión de dichos cargos y que se abstuvieran de participar en las deliberaciones, discusiones, etc., de dicha Junta Insular de Elecciones, ofreciendo los peticionarios prestar cualquier fianza que este tribunal estimare razonable exigir como condición precedente a la expedición de dicha medida provisional.

Con vista de la petición de mandamus y de la sección 1 de la Ley Electoral, expedimos el auto condicional de mandamus, así como la medida provisional solicitada, previa prestación de fianza por quinientos dólares que inmediatamente fué radicada por los peticionarios.

Compareció el Gobernador y radicó su contestación, en la cual expuso las razones por las cuales no debía, a su juicio,

expedirse el auto perentorio solicitado. Alegó que nombró a Gustavo Cruzado Silva y a Ernesto Mieres Calimano para los cargos aludidos, a petición oficial por escrito de José Ramírez Santibáñez en su capacidad de Presidente del Partido Liberal Puertorriqueño, y que dicha petición llegó a su poder con anterioridad a la que enviara José Enrique Gelpí como secretario del Partido Liberal Puertorriqueño, en comunicación fechada al 30 de marzo de 1944 y recibida por el Gobernador el día 31 del propio mes y año. Negó el Gobernador que la petición del organismo central del Partido Liberal Puertorriqueño le fuere entregada o enviada antes de extender los nombramientos a favor de los indicados señores, y alegó en contrario que cuando la recibió ya los había extendido, y Gustavo Cruzado Silva había jurado su cargo ante el Secretario Ejecutivo. Continuó alegando el Gobernador que dichos nombramientos no son ilegales ni nulos por haber él cumplido con los preceptos de la ley, y que no podría nombrar a los peticionarios toda vez que con anterioridad ya había nombrado legalmente a los señores antes dichos a petición del Presidente del Partido Liberal Puertorriqueño. Finalmente alegó que Gustavo Cruzado Silva había ya tomado posesión del cargo y como defensas especiales expuso: (1) que la solicitud no aduce hechos constitutivos de causa de acción; (2) que Gustavo Cruzado Silva ya había tomado posesión de su cargo el día primero del corriente mes y que el demandado no tiene motivo para destituirlo; (3) que el demandado no podría dar cumplimiento al auto alternativo de mandamus porque dadas las circunstancias antes expuestas resultaría que estaría nombrando dos personas distintas para el mismo cargo, y (4) que el mandamus no es el remedio adecuado, y sí el *quo warranto*.

Los demandados Gustavo Cruzado Silva y Ernesto Mieres Calimano no presentaron alegación alguna ni comparecieron a la vista de este caso.

Los peticionarios presentaron como único testigo a José Enrique Gelpí, quien identificó la minuta de la reunión de la Junta Central del Partido Liberal Puertorriqueño celebrada el 12 de marzo de 1944 y la copia de la comunicación de 30 de marzo de 1944 firmada por el testigo en su carácter de secretario de la Junta Central del Partido Liberal Puertorriqueño, dirigida al Hon. Rexford Guy Tugwell, Gobernador de Puerto Rico, siendo ofrecidos en evidencia ambos documentos y admitidos sin oposición del demandado. Declaró además el señor Gelpí que remitió dicha comunicación por mensajero y que fué recibida en Fortaleza el mismo día 30 de marzo de 1944 a las 6:45 de la tarde; que la recomendación que hiciera la junta central a favor de Luis A. Archilla Laugier y del testigo no ha sido revocada en forma alguna; que desde el 12 de marzo último no ha vuelto a reunirse la junta central ni ningún otro organismo del Partido, y que en ningún momento la junta central del Partido Liberal Puertorriqueño ha tomado el acuerdo de proponer al Gobernador a los señores Gustavo Cruzado Silva y Ernesto Mieres Calimano para los referidos cargos.

La exposición que de las alegaciones y la prueba acabamos de hacer, nos conduce ahora a fijar el alcance de la facultad que la ley confiere al Gobernador para hacer estos nombramientos.

■■ La sección 1 de la Ley Electoral, según fué enmendada en 1934, al crear la Junta Insular de Elecciones prescribe que dicha Junta se compondrá de un Superintendente General de Elecciones como presidente, quien será designado por el Gobernador con el concurso y consentimiento del Senado de Puerto Rico, y de tres personas representando los tres partidos políticos principales de Puerto Rico y de un sustituto de cada uno de dichos miembros, "quienes serán nombrados por el Gobernador a petición [*at the request*, dice la edición inglesa] de los organismos directivos centrales de dichos partidos." No niega el Gobernador que sea deber

ministerial suyo nombrar para dichos cargos a las personas que le sean recomendadas por los organismos directivos centrales del partido respectivo, y admite en su alegato que de no haber nombrado previamente a Gustavo Cruzado Silva y a Ernesto Mieres Calimano, el recurso de mandamus procedería en este caso.

Aceptado por el demandado ese deber ministerial impuéstole por la ley, lo cual es una correcta interpretación de la ley, debemos ahora inquirir: ¿Cumplió ese deber el demandado al nombrar dos personas a petición del presidente del Partido Liberal Puertorriqueño, cuando la junta central, que es el organismo directivo central de dicho Partido, había designado para ser nombrados para esos cargos a los peticionarios en este caso? Arguyen los demandados en su alegato que al prescribir la ley que el Gobernador extenderá los nombramientos para dichos cargos a petición de los organismos directivos centrales de los respectivos partidos, no contempló que dichos organismos comparecerían ante el Gobernador a radicar su petición; que habiendo presentado la petición el presidente del Partido Liberal Puertorriqueño en su capacidad oficial como tal presidente, no venía obligado el Gobernador a abrir una investigación a fin de determinar si efectivamente o no el presidente tenía autoridad para ello y que por el contrario, debía presumirse, de conformidad con la sección 102 de la Ley de Evidencia, que la ley había sido acatada. Profundizando más en su argumentación, arguyen que en dos ocasiones anteriores el presidente y el secretario del Partido Liberal Puertorriqueño, precisamente las mismas personas que en la actualidad ocupan dichos cargos de presidente y secretario, respectivamente, han presentado al Gobernador peticiones similares a la que en este caso présentó el señor Ramírez Santibáñez sin protesta alguna entonces por parte de dicho Partido.[1]

--------

[1] La petición fechada el 11 de marzo de 1944 que el señor José Ramírez Santibáñez dirigió al Gobernador y que recibió éste el 30 del mismo mes y año, dice:

Es obvio que la ley no puede contemplar el absurdo de exigir que la petición de nombramientos sea presentada al Gobernador por el organismo directivo central en pleno, ni tal cosa pretenden los peticionarios, pero esto no significa que el presidente del Partido, que no es otra cosa que el ejecutivo de la junta central, por su exclusiva cuenta y haciendo caso omiso de dicho organismo, pueda indicar al Gobernador mediante su petición personal, las personas que debían ser nombradas para los cargos en controversia, pues ello equivaldría a reconocer en el presidente del partido una facultad que la ley expresamente confirió a su organismo directivo central.

En *Murray* v. *Gill* (Ky., 1937), 106 S. W. (2d) 634, se suscitó una cuestión similar a la del presente caso. La ley

"Hon. Rexford Guy Tugwell, Gobernador de Puerto Rico, San Juan, Puerto Rico.—Señor:

"Por haber renunciado el miembro propietario y el suplente del Partido Liberal Puertorriqueño en la Junta Insular de Elecciones, tengo a bien someter a V. H. para sustituirlos a las siguientes personas:

"Para miembro propietario, Ledo. Gustavo Cruzado Silva.

"Para miembro suplente, Ledo. Ernesto Mieres Calimano.

"De usted muy atentamente,

"(Firmado) José Ramírez Santibáñez, Presidente del Partido Liberal Puertorriqueño."

Compárese con la que con fecha 30 de marzo de 1944 le dirigió el señor Gelpí en representación de la junta central:

"Hon. Rexford Guy Tugwell, Governor of Puerto Rico, La Fortaleza.—My dear Governor Tugwell:

"The Central Committee ('Junta Central') of the Liberal Party of Puerto Rico, on the 12th day of March, 1944, adopted a resolution, which I hereby communicate to you, designating Messrs. Luis A. Archilla Laugier and José Enrique Gelpí, respectively, as the representative and alternate representative of said principal political party in the Insular Board of Elections.

"Pursuant to Section 1 of the present Election Law (Laws of Puerto Rico, 1934, Regular Session, page 188), the central directing body of the Liberal Party of Puerto Rico hereby recommends and requests the appointment of said representatives of the Liberal Party in the Insular Board of Elections.

"Due to pressing matters pending in the Insular Board of Elections, which should not be considered without the proper representation provided by law, immediate action on these appointments is requested.

"Respectfully yours,

"(Signed) José Enrique Gelpí, Secretary, Central Committee (Junta Central, Partido Liberal Puertorriqueño)."

de Kentucky prescribe que "anualmente en el mes de agosto" el *State Board of Election Commissioners* nombrará dos miembros de una junta de condado para cada condado del Estado. El 17 de agosto el comité demócrata del condado de Todd, presidido por Gill, presentó al *State Board* una lista certificada conteniendo los nombres de cinco personas capacitadas, para que el *Board* seleccionara de entre ellas un comisionado para dicho condado. Al reunirse el State Board en el mes de agosto, hizo caso omiso de dicha lista y trató de nombrar al apelante Walter Murray, expidiéndole el correspondiente nombramiento. En vista de esto, las cinco personas recomendadas por el comité demócrata del condado de Todd el 17 de agosto de 1936, y Gill, presidente de dicho comité, radicaron en la corte de circuito del referido condado una petición de *injunction* contra Walter Murray, en la que unieron como demandado al secretario de la corte del condado de Todd, y solicitaron que se expidiese una orden de entredicho ordenando a Murray que se abstuviese de presentar su nombramiento y al secretario de la corte del condado de administrarle el juramento del cargo.

La petición de injunction fué radicada el 29 de agosto de 1936, y el 18 de septiembre L. M. Weathers radicó una petición de intervención en la cual alegaba que en agosto 22 de 1935 había sido debidamente nombrado y tomado posesión del cargo de comisionado demócrata para el condado de Todd; que de acuerdo con la ley, él había sido nombrado por un período de un año y hasta que su sucesor fuese debidamente nombrado y tomase posesión. Alegó que el nombramiento que se intentó hacer a favor de Murray era ilegal y sin autoridad por parte del State Board. Asumió en cuanto al nombramiento de Murray la misma posición que habían asumido los demandantes, y por los mismos fundamentos alegados por ellos, arguyó que el interventor tenía el derecho a continuar desempeñando dicho cargo hasta que su sucesor fuese legalmente nombrado.

Posteriormente los demandantes enmendaron su petición de injunction y alegaron que Gill, presidente del comité del condado de Todd, convocó a dicho comité para una reunión que habría de celebrarse el 14 de agosto en la oficina del secretario de la corte del condado; que a virtud de dicha convocatoria se reunió un número de miembros del comité menor que el necesario para constituir quórum; pero se alegó que antes de celebrarse esa reunión, el presidente había consultado personalmente con un número de miembros del comité, y estas personas así consultadas, quienes estuvieron conformes con los nombres propuestos, adicionadas a las presentes en la reunión, constituían una mayoría del comité, el cual aprobó la certificación de las personas cuyos nombramientos fueron más tarde certificados al State Board. El presidente, de conformidad con este acuerdo, alega que certificó la lista al State Board. Se alegó entonces por los peticionarios que había sido la costumbre general que el presidente certificase la lista sin reunir al comité, y que tal certificado siempre había sido aceptado como bueno por el State Board, y que por esa razón "ellos [el State Board] están impedidos (*estopped*) de cuestionar la validez de su lista." El State Board no fué parte en este asunto.

Resolviendo la cuestión así planteada, dijo la Corte:

"No tomamos en cuenta la alegación de que la actuación del presidente es válida por haberse establecido 'la práctica de que el presidente, sin consultar siquiera a los miembros de la junta, presentaba al State Board los cinco nombres escogidos para ser nombrados.' Consideraremos ese argumento como una alegación de la interpretación contemporánea del estatuto. Esa alegación sólo puede ser considerada por las cortes cuando el estatuto a ser interpretado es vago, incierto o ambiguo. Este principio de interpretación fué aclarado en *Gilbert* v. *Greene,* 185 Ky. 817, 216 S. W. 105; *Sewell* v. *Bennett,* 187 Ky. 626, 220 S. W. 517.

"Podemos decir ahora que la parte del estatuto en cuestión (sección 1596 *a*–2), no está sujeta a crítica alguna por vaguedad o ambigüedad. Prescribe en términos precisos que el nombramiento que debe hacerse por el State Board se seleccionará de una lista de cinco

nombres designados por escrito 'por cada uno de los *comités ejecutivos de condado* de los dos partidos políticos,' debiendo nombrarse uno de cada lista si algunos fueren designados. Este estatuto es claro e inequívoco. No tiene la más mínima ambigüedad. Y podemos decir ahora que lo interpretamos exactamente por lo que el mismo dice, esto es, que la lista presentada debe ser preparada por el comité ejecutivo del condado y no por su presidente. El presidente puede, desde luego certificar al State Board el acuerdo del comité.''

Idéntica doctrina se estableció en *State* v. *Rhodes* (Mo., 1942), 163 S. W. (2d) 978, 980.

 Ley Electoral de Puerto Rico no fija un término dentro del cual el organismo directivo central del partido deba presentar al Gobernador los nombres de las personas a ser nombradas. Siendo ello así, en cualquier momento en que el organismo directivo central presente su petición, el gobernador viene obligado a actuar de conformidad con dicha petición, y no puede constituir una excusa legal para dejar incumplido ese deber ministerial, el hecho de que el presidente del partido, actuando en contra de la ley, le haya presentado antes una petición preparada por él a espaldas de la junta central. Pero alega el querellado, aunque no lo probó, pues no presentó evidencia en apoyo de sus alegaciones, que cuando recibió la petición de la junta central ya los nombramientos se habían extendido a favor de las personas designadas por el presidente del Partido, el demandado Cruzado Silva había jurado su cargo y a la fecha en que se radicó esta petición de mandamus ya había tomado posesión del mismo, y que el querellado no tenía motivos para destituirlo. Que tampoco podía nombrar a las personas designadas por la junta central porque de así hacerlo habría entonces dos personas nombradas para desempeñar cada cargo. Arguye además el querellado que no es el mandamus sino el recurso de quo warranto el remedio a que debieron acudir los peticionarios, pues habiéndose nombrado ya a los señores Gustavo Cruzado Silva y Ernesto Mieres Calimano, no podían

ser éstos destituídos sin ser oídos y para ello éra necesario que fueran partes en el recurso de quo warranto. El querellado en su alegato nos cita una larga lista de casos para demostrarnos que cuando el cargo está ocupado por otra persona, aunque sea ésta un funcionario defacto, el mandamus no procede a menos que el demandante haya ocupado anteriormente el cargo y hubiese sido ilegalmente destituído. Invoca los casos de *Gil* v. *Chardón, Comisionado,* 41 D.P.R. 210; *Branizar* v. *Mendín, Alcalde,* 43 D.P.R. 29, y *Blanco* v. *Domenech, Tesorero,* 45 D.P.R. 853. Arguye además el querellado que una de las razones más poderosas para denegar el mandamus cuando otra persona esté ocupando el cargo del cual no haya sido ilegalmente destituído el demandante, es porque dentro del mandamus la persona que ocupa el cargo, que es la parte directamente afectada por la sentencia, no tiene oportunidad de ser oída ni tiene su día en corte en defensa de su título.

Es un principio universalmente aceptado que cuando un cargo público carece de término definido, a menos que pueda interpretarse legalmente que el propósito del legislador fué crear un término vitalicio sujeto a destitución por justa causa, el incumbente ocupa el cargo a voluntad del poder nominador, quien lo puede destituir en cualquier momento que así lo desee sin previa notificación, sin formulación de cargos, sin audiencia ni explicación alguna. El mero nombramiento de su sucesor lo destituye del cargo. *Blake* v. *United States,* 103 U. S. 227; *Kinsland* v. *Mackey* (N. C., 1940), 8 S. E. (2d) 598; *Garnier* v. *Louisiana Milk Commission* (La., 1942), 8 So. (2d) 611; *Cook* v. *St. Francois County* (Mo., 1942), 162 S. W. (2d) 252, 254. Véase además la monografía en 99 A. L.R. 381, en donde se acopian casos de distintas jurisdicciones de los Estados Unidos, incluyendo algunos de la Corte Suprema federal, y además de Canadá e Inglaterra.

Establecida esta premisa, y teniendo en cuenta que los cargos en controversia no tienen término fijo, dichos cargos

son ocupados a voluntad del poder nominador y sus incumbentes pueden en cualquier momento ser retirados de sus cargos sin notificación, sin formulación de cargos y sin derecho alguno a ser oídos. Bastaría que el Gobernador, en cumplimiento del deber ministerial que le impone la sección 1 de la Ley Electoral, extendiese el nombramiento a favor de los peticionarios para que no pudiese existir contienda en cuanto al derecho al cargo por parte de los actuales incumbentes y los peticionarios pudieran tomar posesión de los mismos.

Siendo ello así, no existe razón legal alguna que impida la procedencia del mandamus en el presente caso, pues a todos los efectos legales la situación es la misma como si los cargos en cuestión no estuviesen actualmente ocupados por otras personas. *Blake* v. *United States,* supra. *Cf. State ex rel. Ayres* v. *Kipp,* 10 S. D. 495.

El caso de *Commonwealth* v. *Gibson* (Pa., 1934), 175 Atl. 389, en que el querellado pone especial énfasis y alega que es similar al de autos y que allí se denegó el mandamus y se dijo por la corte que de haberse presentado un quo warranto el recurso hubiera procedido, es perfectamente distinguible del presente caso. En aquél, contrario a lo que en éste sucede, el cargo en cuestión tenía un término fijo de un año y por consiguiente el incumbente no lo ejercía a voluntad del poder nominador. Consecuentemente, para ser separado del cargo era preciso darle una oportunidad de ser oído en su defensa. Si en el presente caso los cargos en controversia tuviesen un término fijo, tendríamos que convenir con el querellado en que era el quo warranto y no el mandamus el recurso procedente.

Por último, el querellado a la página 16 de su alegato cita del sumario en el caso *State* v. *Wayne County Court* (W. Va., 1922), 114 S. E. 517, la definición del funcionario defacto. Sin embargo, una mera lectura de la opinión, como inmedia-

tamente veremos, sostiene la contención de los peticionarios en el presente caso. Los hechos son los siguientes:

El comité republicano del condado de Wayne debía presentar a la corte de dicho condado una lista de los funcionarios electorales, y a ese efecto se convocó el comité. Dicho comité estaba compuesto de doce miembros, y el día fijado en la convocatoria sólo concurrieron cinco miembros en persona y otro más por poder. Esos seis miembros acudieron donde el presidente para celebrar la reunión, y al negarse éste a celebrarla, se reunieron ellos y procedieron a elegir un miembro adicional para llenar una vacante que se alegaba existía en virtud de haberse ausentado del condado uno de los miembros. Estos siete miembros constituían una mayoría del comité. Actuó uno de ellos como presidente *pro tempore* y otro como secretario, y aprobaron una lista de personas para someterla a la corte del condado para que ésta les extendiera los nombramientos como oficiales electorales. Por otra parte, el presidente sometió otra lista alegando que el comité no se había reunido. Con las dos listas ante sí, la corte del condado procedió a nombrar los funcionarios electorales de la lista sometida por el presidente, rechazando la sometida por el comité. Acudieron entonces los miembros del comité a la Corte Suprema de Apelaciones de West Virginia, y solicitaron un auto de mandamus dirigido a la corte del condado de Wayne para que ésta procediese a nombrar los funcionarios de la lista sometida por el comité.

Luego de discutir la validez de la constitución y actuación del comité, y del derecho del miembro seleccionado para cubrir la alegada vacante para actuar en su carácter de miembro defacto, la corte decretó el auto perentorio de mandamus, expresándose así:

"Esto nos conduce a la conclusión de que la lista de personas que los relatores piden que se ordene a la corte del condado a nombrar fué debidamente certificada y que el presidente, como tal, no tenía derecho a hacer caso omiso de la voluntad del comité certificando la otra lista, ni tampoco tenía la corte del condado facultad alguna

para descartar la lista certificada por los siete miembros antes mencionados, aceptando la presentada por el presidente del comité, la que ni siquiera pretendía ser la actuación del comité sino la exclusiva actuación de su presidente.''

El caso de *State* v. *Wayne County Court*, supra, de que acabamos de citar, fué ratificado en el de *Gainer* v. *County Court of Calhoun County* (W. Va., 1938), 199 S. E. 878.

*Por los fundamentos expuestos procede declarar con lugar la petición de mandamus y ordenar que por el secretario se expida al querellado Hon. Rexford Guy Tugwell, Gobernador de Puerto Rico, un auto de mandamus perentorio ordenándole que sin excusa alguna inmediatamente proceda a extender a favor de los peticionarios Luis A. Archilla Laugier y José Enrique Gelpí los correspondientes nombramientos de miembro propietario y miembro suplente, respectivamente, del Partido Liberal Puertorriqueño ante la Junta Insular de Elecciones de Puerto Rico.*

RESOLUCION

Abril 26, 1944

El 21 del actual los abogados del querellado radicaron una moción en este caso suplicando enmendemos aquella parte de nuestra opinión en que se expresa que el querellado alegó pero no probó que cuando él recibió la petición de la Junta Central ya los nombramientos se habían extendido a favor de las personas designada por el Presidente del Partido Liberal. Sostienen dichos abogados qué esa manifestación podría reflejar un caso de negligencia por parte de ellos, y que esa parte de la opinión es inexacta porque a su contestación acompañaron un número de exhibits, que relacionan, que tienden a probar dichos extremos.

Esos exhibits no fueron ofrecidos en evidencia, y consecuentemente, a pesar de haberse acompañado a su contestación, no constituyen evidencia del querellado.

Como este caso se radicó originalmente en este tribunal, son de aplicación las Reglas de Enjuiciamiento Civil que ri-

gen para las cortes de justicia de Puerto Rico desde el día primero de septiembre de 1943. Así, pues, parece conveniente llamar la atención de los abogados peticionarios a lo dispuesto en la regla 10(c), que dice:

"Cualquier manifestación hecha en una alegación podrá adoptarse por referencia en cualquiera otra parte de la misma o en otra alegación o moción. Una copia de cualquier documento escrito que se acompañe como *exhibit* a una alegación *se considerará para todos los efectos como parte de la misma.*" (Bastardillas nuestras.)

Fué por eso que dijimos que el querellado alegó pero no presentó prueba para sostener su alegación, ya que era su deber ofrecer los exhibits en evidencia si quería probar los hechos contenidos en los mismos. Hubiera sido innecesario presentar los exhibits en evidencia si este tribunal, haciendo uso de la facultad que le concede la regla 7(a), hubiese exigido a los demandantes que radicasen una réplica a la contestación y en la réplica se hubiese admitido por los demandantes la verdad del contenido de dichos exhibits.

Pero como no se exigió a los demandantes que radicasen una réplica a la contestación, los exhibits unidos a ésta, como cualquiera otra alegación de la misma, se tienen por negados de acuerdo con la regla 8(d).

*Por lo expuesto, no ha lugar a la "Moción sobre Enmienda a la Opinión" radicada el 21 de abril de 1944 por los peticionarios.*