CARLOS MATOS, demandante y apelado, *v.* RAÚL GÁNDARA, EN SU CARÁCTER DE JEFE DEL SERVICIO INSULAR DE BOMBEROS DE P. R., demandado y apelante.

Núm. 9674.—*Sometido:* Junio 2, 1948. *Resuelto:* Junio 24, 1948.

*Hon. Procurador General Luis Negrón Fernández y A. Torres Braschi y F. Torres Aguiar, Procuradores Generales Auxiliares,* abogados del apelante; *Guillermo S. Pierluissi y C. II. Juliá,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del trinal.

El 26 de julio de 1946 Carlos Matos radicó una petición de *mandamus* ante el tribunal de distrito contra Raúl Gándara, Jefe del Servicio Insular de Bomberos, solicitando que se repusiera al peticionario en su cargo de Jefe Auxiliar de dicho Servicio y que se le pagaran sus sueldos desde la fecha en que fué suspendido en 22 de noviembre de 1944 hasta la fecha de su reposición. Luego de un juicio en los méritos, el tribunal inferior declaró sin lugar la solicitud de reposición. Sin embargo, ordenó que se pagaran al peticionario sus sueldos desde el 22 de noviembre de 1944, fecha de la suspensión, hasta el 5 de febrero de 1946, fecha en que el tribunal de distrito resolvió que había sido legalmente destituído del cargo. El peticionario no apeló. El demandado apela de aquella parte de la sentencia que ordena el pago de sueldos al peticionario.

El primer error señalado por el demandado es que la orden de pago de los sueldos atrasados es contraria a derecho e incompatible con la primera parte de la sentencia que denegó la reposición del peticionario.

La consideración de este error hace imperativo un resumen de la evidencia. El 22 de noviembre de 1944 el demandado formuló un pliego de cargos al peticionario, que fueron dilucidados ante el Juez Cordovés Arana, actuando como árbitro mediante nombramiento al efecto, extendídole por el Gobernador Tugwell. El 31 de enero de 1945 el Juez

Cordovés recomendó la destitución de Matos. A base de esta recomendación, el 12 de febrero de 1945 el Gobernador Tugwell le escribió a Gándara ordenándole destituyera a Matos de su cargo en el Servicio Insular de Bomberos tan pronto como recibiera su carta. El 3 de marzo de 1945 el Gobernador Tugwell le cablegrafió al Gobernador Interino Sr. Fernós desde Wáshington al efecto de que cumpliera en seguida sus instrucciones de. no haberse cumplido ya.

El 4 de marzo de 1945 Gándara, quien había estado dilatando la destitución de Matos porque era de opinión que no existía justificación para ello, le mostró al peticionario copia del cable enviádole a Fernós por el Gobernador Tugwell. Gándara aconsejó a Matos que firmara dos cartas que aquél había redactado. La fecha de estas cartas se retrotraía al 2 de marzo de 1945 con el fin de que aparecieran escritas con anterioridad al recibo del cable. Una de dichas cartas era de Matos a Gándara renunciando el cargo; la otra era de Matos al Gobernador Tugwell, en la que el primero se comprometía a no solicitar o aceptar cualquier otro cargo en el gobierno. Gándara le aconsejó a Matos que esta acción le era más beneficiosa que la destitución.

Matos firmó ambas cartas. Gándara las envió al Gobernador y a la Comisión de Servicio Civil, respectivamente. Por comunicación del 5 de marzo de 1945, Gándara le informó al Gobernador sobre estas dos cartas. En dicha comunicación Gándara le aseguró al Gobernador que él había aceptado inmediatamente la renuncia de Matos.

El 5 de marzo de 1945 Matos visitó a Gándara y le pidió que le devolviera sus dos cartas de 4 de marzo, antedatas 2 de marzo. Gándara le contestó que no podía hacer esto porque se las había enviado al Gobernador y a la Comisión de Servicio Civil.

Hubo conflicto en la evidencia en cuanto a la próxima carta. El peticionario presentó en evidencia una carta de Gándara a Matos, fechada el 5 de marzo de 1945, que lee

en parte "su renuncia no le ha sido aceptada. Su *status* actual es de suspensión de empleo y sueldo". Gándara declaró que no recordaba haber escrito dicha carta y creía que nunca la escribió. Admitió la autenticidad de su firma, pero manifestó que en varias ocasiones firmaba y dejaba en su oficina papeles de cartas en blanco. Matos y otro testigo declararon que Gándara hizo personalmente la carta a maquinilla y la firmó en presencia de ellos.(¹) Por otro lado, en el récord hay copia de una carta de Gándara a Matos, del 4 de marzo de 1945, aceptándole a éste la renuncia, a partir del 23 de noviembre de 1944. Las partes estipularon que si se llamaba nuevamente a declarar, Gándara diría que él le envió por correo esta carta a Matos y que éste declararía que nunca la recibió.

Cerca de un año después de su recomendación original, y a requerimiento del Gobernador Interino Fernós, el Juez Cordovés oyó prueba adicional como árbitro. Su nuevo informe finalizaba así: "El Sr. Carlos Matos está fuera del Gobierno desde hace cerca de un año a virtud de renuncia que de su cargo hiciera, pero si hemos de tener en cuenta su honestidad, eficiencia y laboriosidad mientras actuó como empleado de la referida agencia y que sus actuaciones a que se refieren los cargos formulados en su contra constituían irregularidades sancionadas por la práctica establecida en el Servicio Insular de Bomberos de P. R. que en forma alguna perjudicaron al Pueblo de Puerto Rico o a dicho Servicio, es de justicia brindarle una nueva oportunidad de ingresar en el Servicio público si así es su deseo, y así lo recomendamos."

(¹)Durante el juicio, a solicitud del peticionario, el tribunal de distrito ordenó que esta carta fuese sometida a un perito, empleado del gobierno, con el fin de que éste determinara si la firma había sido estampada en la carta después de ésta haber sido mecanografiada. En su alegato ante este Tribunal el peticionario afirma que el perito rindió su informe contestando la pregunta en la afirmativa. Pero del récord ante nos no aparece dicho informe. De cualquier modo, como más adelante se indicará, la conclusión del tribunal inferior al efecto de que Gándara escribió la carta no se impugna ante este Tribunal y por consiguiente la aceptamos.

El 5 de febrero de 1946 el Gobernador Tugwell le escribió al peticionario que si bien no estaba de acuerdo con esta recomendación, "Creo que es justo exonerarlo de cualquier actuación punible, cosa que hago a través de esta carta."

De lo antes expuesto, el tribunal de distrito llegó a dos conclusiones de hechos: (1) desde el 22 de noviembre de 1944, fecha en que se formularon los cargos, hasta el 5 de febrero de 1946, fecha en que el Gobernador le hizo saber al peticionario su decisión de no seguir las recomendaciones del Juez Cordovés, el status del peticionario era el de un funcionario suspendido de empleo y sueldo sujeto a la vista de los cargos formuládosle; (2) la carta del Gobernador del 5 de febrero de 1946 tuvo el efecto de destituir al peticionario de su cargo.

La corte inferior resolvió entonces que Matos fué destituído legalmente. La teoría de la corte fué que el Gobernador tenía el poder de destituir a Matos sin la formulación de cargos ni celebración de vista, a tenor con lo resuelto en *Archilla v. Tugwell, Gobernador,* 63 D.P.R. 413, en *Cantellops v. Fernós, Comisionado,* 65 D.P.R. 797, la ley creando su cargo, el Acta Orgánica y varios otros estatutos. Es importante indicar que esta parte de la sentencia denegándole la reposición no fué apelada por el peticionario y constituye por tanto la ley del caso.

Pero en la restante parte de la sentencia, de la cual apela el demandado, el tribunal de distrito no obstante ordenó a éste que tomara los pasos necesarios para que se pagaran al peticionario los sueldos atrasados correspondientes al período de suspensión desde el 22 de noviembre de 1944 al 5 de febrero de 1946. La teoría del tribunal de distrito sobre este punto fué que, a pesar del hecho de que el peticionario no tenía derecho a ello, el Gobernador había optado por formularle cargos y darle la oportunidad de ser oído. El tribunal inferior fué de opinión que esto creó "una situación de derecho que no podemos ignorar, o sea

cual es la condición jurídica en que se coloca un empleado suspendido de empleo y sueldo mientras se sustancian determinados cargos en su contra."

El tribunal de distrito en consecuencia resolvió que si bien Matos pudo haber sido destituído sin previa formulación de cargos o celebración de vista, dado el hecho de que se formularon no obstante los cargos y se celebró la vista, entra en juego la doctrina establecida en *Rosario* v. *Gallardo*, 62 D.P.R. 266, *Rosario* v. *Gallardo*, 65 D.P.R. 57 y *Sáenz* v. *Buscaglia*, 61 D.P.R. 396, y que Matos tenía derecho, como funcionario suspendido, a recibir sus sueldos atrasados, si luego surge que los cargos objeto de la vista eran infundados.

Aplicando esta teoría, el tribunal inferior resolvió que el segundo informe del Juez Cordovés exoneró al peticionario; que el Gobernador Tugwell no obstante optó por destituir a Matos; que el Gobernador tenía derecho a así actuar en virtud de su autoridad plenaria de destitución en relación con este empleo específico; y que no procede el mandamus para reponer a Matos. Pero luego la corte resuelve que toda vez que los cargos no fueron probados, el peticionario tenía derecho a los sueldos atrasados desde el 22 de noviembre de 1944 hasta el 5 de febrero de 1946, a tenor con los casos de *Rosario*.

Pasemos primeramente a la conclusión de hecho del tribunal de distrito al efecto de que Gándara nunca le aceptó la renuncia a Matos. La corte resolvió que Gándara de hecho le escribió a Matos la carta del 5 de marzo de 1945 no aceptándole la renuncia. Si bien no lo hizo expresamente, inferimos que el tribunal de distrito también halló probado que Gándara nunca le envió a Matos la carta del 4 de marzo de 1945 aceptándole la renuncia, copia de la cual está archivada en la Comisión de Servicio Civil. El demandado no impugna dichas conclusiones de hecho ante este Tribunal. Por consiguiente, las aceptamos como correctas, no obstante

el hecho de que Gándara incuestionablemente escribió al Gobernador Tugwell el 5 de marzo de 1945 diciéndole que había aceptado la renuncia de Matos.

Los diversos rumbos que tomó este caso se desprenden del resumen arriba expuesto. Aun aceptando las conclusiones de hecho del tribunal inferior, en forma alguna estamos convencidos de que la renuncia de Matos no fuera efectiva, en vista del hecho de que ésta fué recibida por Gándara y archivada con la Comisión de Servicio Civil. Tampoco estamos satisfechos de que el segundo informe del Juez Cordovés inexorablemente debe interpretarse como una exoneración. Por el contrario, el Juez Cordovés presumió que la renuncia de Matos tuvo efecto un año antes, y él solamente recomendaba que se le diera una oportunidad de volver a ingresar en el servicio público, no necesariamente en su anterior cargo en el Servicio Insular de Bomberos. Pero dejamos a un lado estas cuestiones para discutir un punto más fundamental.

Una vez que se niega el mandamus para reponer en su cargo a un funcionario público, surge una seria cuestión de si los tribunales pueden no obstante conceder el remedio incidental e independiente de ordenar el pago de los sueldos atrasados por la suspensión ilegal. *Cf. Cowan* v. *State,* 116 P.2d 854 (Wyo., 1941); *Annotation,* 5 A.L.R. 572; *Cantellops* v. *Fernós, Comisionado,* 65 D.P.R. 807, 814; *Abella* v. *Tugwell, Gobernador,* 68 D.P.R. 464; *Maldonado* v. *Programa de Emergencia de Guerra, etc.,* 68 D.P.R. 976. Y véanse el artículo 659, Código de Enjuiciamiento Civil; *Newbury* v. *Civil Service Commission,* 108 P.2d 745, 747 (Calif., 1940); *Bailey* v. *Edwards,* 133 P. 1095, 1098 (Mont., 1913); *Brown* v. *Warthen,* 65 P. 255 (Kans., 1901). Pero aún suponiendo que en otros casos pudiera obtenerse tal remedio, no podemos convenir en que procede en este caso.

El tribunal de distrito resolvió que el peticionario fué destituído legalmente en virtud de la autoridad plenaria

del Gobernador para destituir y por tanto no podía ser repuesto a pesar de su alegada exoneración del Juez Cordovés. Dejamos a un lado la cuestión de si el Gobernador Tugwell pudo haber creído que se estaba negando a emplear a Matos en un nuevo cargo, como un empleado que había renunciado, y no que se negaba a reponerlo en su antiguo cargo como empleado suspendido. Al no apelar de ella, el peticionario ha aceptado la conclusión del tribunal de distrito al efecto de que el Gobernador Tugwell lo destituyó legalmente el 5 de febrero de 1946. En consecuencia aceptamos dicha conclusión como la ley del caso. Pero no podemos estar conformes con la resolución del tribunal inferior al efecto de que si el Gobernador opta por conceder a un empleado o funcionario el privilegio de la formulación de cargos y vista antes de que el Gobernador ejercite su plena autoridad de destitución, a lo cual el empleado no tiene derecho, éste tiene derecho a cobrar sus sueldos por el período en que estuvo suspendido mientras estaban pendientes los cargos, si el Gobernador luego hace uso de su poder para destituirlo a pesar del hecho de que durante la vista los cargos no fueron probados. El tribunal inferior no cita autoridad alguna en apoyo de su teoría y ninguna hemos encontrado. Los casos de *Rosario* trataban de un profesor que tenía derecho por ley a la formulación de cargos y a la vista. Y en el primer caso de *Rosario* expresamente dejamos a un lado los casos que trataban de (págs. 270-1) "otros empleados públicos que no gozan de derechos adquiridos como los que confiere la ley a los maestros permanentes . . .".

Si a tenor con la ley un empleado no puede ser destituído sin la formulación de cargos, su suspensión y la posterior exoneración presentan una cuestión. Pero surge un problema enteramente diferente cuando el Gobernador ordena la formulación de cargos y la celebración de vista a empleados que ocupan sus cargos a voluntad suya. Bajo tales

circunstancias la suspensión—y la destitución definitiva—dependen, como cuestión de derecho, de la voluntad del Gobernador y no de una ley que ordena este procedimiento. La suspensión—y la destitución—son por tanto legales independientemente del resultado de la vista. Como el peticionario fué legalmente suspendido y destituído, no tiene derecho al mandamus en solicitud de sus sueldos por el período en que estuvo suspendido.

Dado el resultado a que hemos llegado en cuanto al primer error, el tribunal inferior también cometió el segundo al concederle las costas al peticionario.

*Las disposiciones de la sentencia en lo que se refieren a los sueldos atrasados y a las costas serán revocadas y se dictará nueva sentencia desestimando la petición.*

El Juez Asociado Sr. De Jesús no intervino.