Ernesto Cruz Andréu, peticionario y apelante, *v.* Rafael Buscaglia y Patrick J. Fitzsimmons, en su carácter, respectivamente, de Tesorero y Auditor de Puerto Rico, demandados y apelados.

Núm. 8613.—*Sometido:* Enero 13, 1943. *Resuelto:* Abril 7, 1943.

738

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogagados del apelante; *Hon. Procurador General Interino M. Rodríguez Ramos* y *G. Benítez Gautier, Procurador Auxiliar,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los hechos esenciales de este caso, sobre los cuales no existe controversia alguna, son como sigue:

El peticionario ha sido durante más de veinte años empleado del Gobierno Insular, comprendido dentro del Servicio Civil Clasificado; y desde el 1º de octubre de 1935 estuvo desempeñando el cargo de Jefe y Contador de la Sección de Cobros y Reclamaciones del Negociado de Contribuciones Sobre la Propiedad, en el Departamento de Hacienda, por virtud de nombramiento extendídole por el Tesorero de

Puerto Rico, con la aprobación de la Comisión de Servicio Civil.

En marzo 3 de 1942, el peticionario recibió una comunicación del Tesorero informándole que de acuerdo con las disposiciones de la Ley núm. 41, aprobada el 21 de noviembre de 1941 ((2) pág. 153), le había extendido un nuevo nombramiento para el cargo de "Inspector, Negociado de Contribución Sobre Ingresos", con el mismo sueldo de $2,200 anuales que el peticionario había venido percibiendo. El nuevo nombramiento debía ser efectivo a partir del 19 de febrero de 1942.

En la petición radicada ante la Corte de Distrito de San Juan se solicita la expedición de un auto de *mandamus* por el que se ordene al Tesorero que reponga al peticionario en su cargo de Oficinista y Contador de la División de Embargos, Cobros y Reclamaciones y que expida las nóminas de sueldos correspondientes a dicho cargo. Las alegaciones de la petición son, en síntesis, las siguientes:

Que el peticionario no es elegible ni posee las cualificaciones para el nuevo cargo que le ha extendido el Tesorero, el cual es de distinta naturaleza y requiere exámenes distintos a los que tomó y aprobó el peticionario para ocupar el cargo de Contador.

Que la actuación del Tesorero tiende a privar al peticionario de su cargo de Contador, en el disfrute del cual le protege la Ley de Servicio Civil, llevándole a otra posición en la cual no estaría así protegido, siendo inseguro y problemático, primero, que el Tesorero retenga en la nueva plaza al peticionario; segundo, que el peticionario apruebe los exámenes para la plaza de Inspector; y, tercero, que aun aprobado dichos exámenes, el Tesorero le dé preferencia al hacer el nombramiento definitivo.

Que el peticionario no desea perder el amparo y protección a que tiene derecho bajo la Ley de Servicio Civil; y no quiere ni ha solicitado el puesto de Inspector, porque no tiene

740

los conocimientos, experiencia y aptitud necesarios para s
desempeño.

Que al ser entrevistado por el abogado del peticionari
con el propósito de conseguir una reconsideración de su or
den, el Tesorero manifestó a dicho abogado que él deseab
traer al puesto de Contador que ocupaba el peticionario
una persona cuya conducta en el desempeño de otra plaz
era para él sospechosa; que la negativa del peticionario
acatar su mandato podría ser interpretada por él como u
acto de indisciplina; que si el peticionario acudía a los tri
bunales, él consideraría ese proceder como altamente censu
rable y que eso podría crearle una situación muy difícil e
el Departamento, cuyas consecuencias tendría que lamenta
el peticionario.

Que la persona que nombrara el querellado para sustitui
al peticionario en su cargo de Contador se negó a acepta
el nombramiento y acudió ante los tribunales en acción con
tra el querellado.

Que a mediados del mes de marzo de 1942, el Tesorer
envió al peticionario un cheque como compensación por ser
vicios en la plaza de Inspector en el Negociado de Contribu
ciones Sobre Ingresos, la cual plaza no había aceptado n
pensaba aceptar el peticionario. Éste no aceptó el referid
cheque.

Que las actuaciones del Tesorero constituyen una fla
grante violación de las disposiciones de las secciones 28, 31
y 32 de la Ley de Servicio Civil (Ley núm. 88 de 1931 pág
535) y causan daños irreparables al peticionario al privarle
de los derechos y privilegios que la ley le reconoce y garan-
tiza.

Que las disposiciones de la Ley núm. 41 de 1941, bajo las
cuales ha actuado el querellado, son nulas e inconstituciona-
les, pero que aun cuando fueren legales y válidas, ninguna
de ellas autoriza al Tesorero para remover de su cargo al
peticionario, ni deja sin efecto las disposiciones de la Ley
de Servicio Civil.

En mayo 1º, 1942 el peticionario radicó una demanda complementaria, en la que alegaba: que después de haber sido notificado de la petición de *mandamus,* el querellado dió instrucciones al Jefe del Negociado de Contribuciones para que separase inmediatamente al peticionario de su cargo; que en carta de 28 de abril de 1942, entregada al querellado el día 29 del mismo mes, el Tesorero requirió al peticionario para que se abstuviera de continuar concurriendo al Negociado de Contribuciones; y que el peticionario contestó dicha carta, por medio de su abogado, informando al Tesorero que en obediencia a su orden se retiraría de su cargo, pero que lo hacía involuntariamente y sin perjuicio de continuar tramitando su acción para que se le reponga en su cargo de Contador y en todos los derechos inherentes al mismo.

Formuló el Tesorero excepción previa a la demanda, alegando insuficiencia de hechos para determinar una causa de acción; y en contestación alegó:

1. Que el cargo de "Jefe de la Sección y Contador" que ocupaba el querellante fué abolido por la Ley de Presupuesto, Ley núm. 179 de mayo 14, 1941, leyes de ese año, pág. 1069 y que en su lugar se creó un nuevo cargo cuyo verdadero título es "Primer Oficinista y Contador" y para el cual se nombró al peticionario a partir de julio 1º, 1941; que al nombrar al peticionario para el cargo de Inspector en el Negociado de Contribuciones Sobre Ingresos, el Tesorero procedió de conformidad con la Ley núm. 41 de 21 de noviembre de 1941 (Sesión Extraordinaria, pág. 153); que dicho cargo de Inspector es idéntico o muy similar al que el peticionario desempeñaba antes como Primer Oficinista y Contador en la Sección de Cobros y Reclamaciones, con igual remuneración e idénticos deberes y atribuciones; que no es cierto que el peticionario no tenga las cualificaciones requeridas para el nuevo cargo, pues éste y el anterior son idénticos; que al desempeñar el cargo para el que ha sido nombrado por el Tesorero, el peticionario no pierde el amparo y protección

de la Ley de Servicio Civil, toda vez que el nombramient
se ha hecho de acuerdo con dicha ley; y que el Tesorero, d
acuerdo con la citada ley de noviembre 21 de 1941, tiene d
recho a clasificar al peticionario y determinar la plaza a qu
el mismo debe ser asignado. Alega además el Tesorero, qu
las disposiciones de la Ley núm. 41 de 1941 no dejan si
efecto las de la Ley de Servicio Civil relativas a la form
en que puede separarse de su cargo a un funcionario públic
y que no existe conflicto alguno entre ambas leyes; y sos
tiene que todos los empleados del Departamento de Hacienda
cesaron en sus cargos en febrero 18, 1942 por virtud de la
disposiciones de la Ley núm. 41 de 1941.

En julio 8 de 1942 la Corte de Distrito de San Juan dict
sentencia declarando que la Ley núm. 41 es válida; que d
acuerdo con ella el Tesorero está facultado para determina
y clasificar las plazas a que habrán de ser asignados los em
pleados del Departamento de Hacienda; que las actuacione
del Tesorero son válidas; y que no procede la reposición de
peticionario en su antiguo puesto.

En apoyo del recurso por él interpuesto, para ante esta
corte, el peticionario apelante imputa a la corte sentencia
dora la comisión de cinco errores, los que consideraremos
conjuntamente como si de uno sólo se tratara.

En la Ley núm. 173 de mayo 15 de 1940 (pág. 1001), fi
jando el presupuesto para el año 1940–1941, en el Negociado
de Contribuciones Sobre la Propiedad aparecen las siguien-
tes partidas:

"*Sección de Embargos:*
    "Jefe de la Sección, con todas las facultades otor-
        gadas a los agentes de rentas internas,                 $2, 400. 00
    "Oficinista,                                              1, 140. 00
    "Oficinista mensajero,                                      600. 00
    "Dos oficinistas, a $812.25 cada uno, con todas
        las facultades de agentes de rentas internas,       1, 624. 50
"*Sección de Cobros y Reclamaciones:*
    "Jefe de la sección y contador,                         2, 200. 00

"Oficinista encargado de las reclamaciones,    $2,.052. 00
  "Oficinista,    1, 425. 00
  "Oficinista auxiliar encargado de reclamaciones,    1, 140. 00
  "Oficinista,    950. 00
  "Oficinista,    1, 140. 00
  "Oficinista,    1, 000. 00
  "Tres oficinistas, a $812.25 cada uno,    2, 436. 75
  "Oficinista,    900. 00.''

La Ley de Presupuesto para 1941–42 (Ley núm. 179 de 1941) mantuvo separadas la Sección de Embargos y la Sección de Cobros y Reclamaciones, denominando al encargado de esta última "Primer Oficinista y Contador" en lugar de "Jefe de la Sección y Contador", que era la denominación que tenía en el presupuesto anterior. Llegado el 1º de julio de 1941, fecha en que empezó a regir la Ley núm. 179, el peticionario continuó al frente de la Sección de Cobros y Reclamaciones, bajo la nueva denominación de Primer Oficinista y Contador, con el mismo sueldo y, según veremos más adelante con los mismos deberes y atribuciones que antes había tenido.

La Ley núm. 41 de noviembre 21, 1941, tiene de acuerdo con su título dos propósitos fundamentales: (a) enmendar la Ley núm. 179 de 1941 en el sentido de ampliar el Departamento de Hacienda, y (b) reorganizar dicho departamento, "creando nuevos negociados y divisiones, consolidando otros, creando nuevas plazas y aumentando sueldos". Por virtud de las disposiciones de dicha ley, la Sección de Embargos y la Sección de Cobros y Reclamaciones que existían bajo la Ley núm. 179 de 1941 fueron consolidadas o refundidas para formar con ellas la División de Embargos, Cobros y Reclamaciones, con el siguiente personal:

"Jefe de la División que deberá ser abogado postulante,    $3, 600. 00
"Primer oficinista con todas las facultades otorgadas a los agentes de rentas internas,    2, 400. 00
"Oficinista,    1, 140. 00
"Dos oficinistas a $812.25 cada uno,    1, 624. 50

"Oficinista mensajero, $600. 00
"*Oficinista y contador,* 2, 200. 00."
 (El resto del personal es igual al del año anterior.)

Sostiene el peticionario apelante, que estando el cargo que él ocupaba dentro del servicio clasificado, el Tesorero no podía separarle o despedirle de su empleo, salvo por causas justificadas y previa formulación de cargos, y no antes de dársele oportunidad para ser oído en su propia defensa, de acuerdo con lo dispuesto por la sección 28 de la Ley de Servicio Civil.

La primera cuestión que debemos considerar y resolver es la siguiente: ¿Es el cargo de "Oficinista y Contador" de la División de Embargos, Cobros y Reclamaciones, que figura en la Ley núm. 41 de 1941, el mismo que durante varios años ocupó el peticionario, primero bajo el título de "Jefe y Contador" y más luego bajo la denominación de "Primer Oficinista y Contador", en la Sección de Cobros y Reclamaciones?

Desde octubre 1º, 1935 hasta julio 1º, 1941, fecha en que empezó a regir la Ley núm. 179, o sea la del presupuesto para el año 1941–1942, el peticionario ocupó el cargo de Jefe y Contador de la Sección de Cobros y Reclamaciones. Desde el primero de julio de 1941 el peticionario continuó ocupando el mismo cargo que antes desempeñaba, con iguales deberes y atribuciones, pero bajo la nueva denominación de "Primer Oficinista y Contador".

En el acto de la vista, el Sr. Martínez Casanova, Jefe Interino del Negociado de Contribuciones Sobre la Propiedad, declaró que el peticionario desempeñó el cargo de Primer Oficinista en la División de Embargos, Cobros y Reclamaciones, en el Negociado de Contribuciones Sobre la Propiedad, hasta el día 30 de abril de 1942. Continuó declarando el Sr. Martínez en la forma siguiente:

"P. ¿Cuando usted empezó a desempeñar el cargo de Jefe del Negociado de Contribuciones e Ingresos ya él desempeñaba esa plaza en el Departamento de Hacienda?

"R. La desempeñaba.

"P. ¿Mientras usted estuvo en el Departamento como Jefe de ese Negociado, él siempre tuvo los mismos deberes y obligaciones?

"R. Los tuvo.

"P. ¿O sea los tuvo en el año 1939, 1940, en el 1941 y en el 1942?

"R. Correcto."

La Ley núm. 41 empezó a regir inmediatamente después de su aprobación, o sea el 21 de noviembre de 1941. Desde esa fecha el peticionario siguió ocupando el cargo que antes ocupaba, bajo la nueva denominación de "Primer Oficinista", hasta el 30 de abril de 1942, cuando fué separado del cargo por haberse negado a aceptar su traslado a otro puesto en el cual no había de estar amparado por la Ley de Servicio Civil.

Los hechos y circunstancias que hemos apuntado nos lle-- van inevitablemente a la conclusión de que el cargo de que fué separado el peticionario en abril 30 de 1942 es el mismo que había venido ocupando y desempeñando a satisfacción de sus superiores desde el año de 1935. Que eso mismo opinó la corte inferior se desprende de la siguiente cuestión por ella planteada a los abogados del Tesorero: "Yo quisiera saber si esa ley le permite cambiar a un empleado *cuyo cargo no ha sido eliminado* para otro cargo *distinto* de igual sueldo o mayor." (Bastardillas nuestras.)

El Sr. Francisco Juliá, Jefe del Negociado de Contribuciones Sobre la Propiedad desde 1931 hasta diciembre 31 de 1941, declaró que el cargo ofrecido al peticionario en el Negociado de Contribución Sobre Ingresos es enteramente distinto al cargo que ocupaba el peticionario hasta la fecha de su remoción. La contestación del Tesorero admite que el peticionario no ha llenado los requisitos exigidos por la Comisión de Servicio Civil para el cargo de Inspector en el Negociado de Contribución Sobre Ingresos y que dicha plaza requiere un examen distinto al que tomó y aprobó el peticionario para el cargo que ocupó hasta el 30 de abril de 1942.

██ Es doctrina bien sentada la de que cualquier cargo público comprendido dentro del Servicio Civil Clasificado puede ser abolido de buena fe por la Legislatura, pues las leyes de Servicio Civil no garantizan a ningún empleado público el derecho a ocupar un puesto que ya no es necesario. *State ex rel Voris* v. *Seattle,* 74 Wash. 199, 133 P. 11; 4 A.L.R. 198; *State ex rel Ware* v. *Sewerage & Water Bd.,* 160 La. 251, 106 So. 845; Anotación 37 A.L.R. 816. Empero, la Ley de Servicio Civil no puede ser evadida o ignorada mediante una ficticia o pretendida abolición de un cargo, como por ejemplo cuando se hace una mera alteración en su denominación, se separa del mismo al incumbente y se nombra en su lugar a otra persona para cumplir substancialmente las mismas obligaciones. Anotación: 20 Ann. Cases 247; *Garvey* v. *Lowell,* 199 Mass. 47, 85 N. E. 182; *State ex rel. Quintín* v. *Edwards,* 40 Mont. 287, 106 P. 695. Véase: *Rosario* v. *Cuevas, Comisionado,* 60 D.P.R. 470.

En el presente caso el cargo que ocupaba el peticionario bajo la protección de la Ley de Servicio Civil no ha sido abolido. Su denominación ha sido variada, pero sus obligaciones continúan siendo las mismas que durante más de siete años el peticionario cumplió a satisfacción de sus superiores. Sin una razón suficiente para justificar el cambio, se trata de trasladar al peticionario de un puesto permanente en el que está protegido por la Ley de Servicio Civil vigente a otro de igual sueldo pero de carácter temporero, con la obligación de tomar y pasar un examen para poder ocuparlo con *status* permanente. Se posterga así a un empleado a quien el propio Tesorero calificó de experto, bueno y eficiente, y se nombra para sustituirle a un Inspector del Negociado de *Income Tax.* En su declaración ante la corte inferior, el Tesorero explicó la necesidad del cambio y describió la persona que habría de sustituir al peticionario en su empleo así:

"Entonces le indiqué . . . que la necesidad había surgido como consecuencia de tener un Inspector de *Income Tax* que no gozaba de la confianza de la División de Income Tax, pero que estaba percibiendo un sueldo importante, que desde mucho antes de yo ser Tesorero ya no se le daba trabajo de Income Tax de acuerdo con la posición en que estaba, que sí venía haciendo trabajos insignificantes de poca monta que podía desempeñar cualquier oficinista de sesenta o setenta y cinco pesos al mes, y en cambio este señor estaba recibiendo un sueldo de dos mil doscientos dólares anuales.

". . ." . . . . . . . . . . . .

". . . Toda la información con relación a esa persona coincidía en que había duda de su honradez en las investigaciones, pero además de eso de esa opinión que ya existía en relación con los jefes y empleados de *Income Tax* en el momento en que ya yo era Tesorero había sido compartida por jefes anteriores, porque ya desde antes el señor ése lo tenían en esa posición de no darle trabajo, no darle oportunidad . . . . su jefe inmediato dudaba que tuviera la capacidad moral para desempeñar el cargo siendo un trabajo tan delicado como el de investigar libros en relación con el pago de Income Tax. . . . Vamos a trasladar a esa persona a un sitio donde pueda hacer labor de acuerdo con su nombramiento, labor de contabilidad pero donde no esté en contacto con el público."

No podemos aceptar como justa y sabia regla de moralización y saneamiento del servicio público la de que para separar del servicio a un empleado en quien se ha perdido la confianza hasta el punto de no dársele el trabajo que está obligado a hacer, para evitar contacto con el público e impedir que se dejara sobornar, sea necesario trasladarle a un puesto ocupado permanentemente por un empleado honrado, experto y eficiente, enviando a este último al puesto temporero. Es cierto que a través del procedimiento que se ha tratado de seguir en este caso el Tesorero puede deshacerse del empleado de quien desconfía, sin necesidad de formularle y probarle cargos, pero es igualmente cierto que ese procedimiento priva al peticionario, empleado permanente que cumplió estrictamente sus deberes, de la protección de la Ley de Servicio Civil, dejándole expuesto a la voluntad o

capricho del Jefe del Departamento, quien podría separarle de su nuevo empleo sin necesidad de formularle cargos.

En *Rosario* v. *Cuevas, Comisionado,* supra, resolvimos que un mero cambio de nombre no es por sí solo suficiente para crear un nuevo cargo y abolir el que existía anteriormente; y que cuando se suprime un cargo y en seguida se crea otro bajo una nueva designación, pero con iguales deberes que el anterior, las cortes amparan al funcionario perjudicado, por entender que el cambio se ha hecho con el propósito de evadir la Ley de Servicio Civil. Véase *State* v. *Seattle,* 83 Wash. 91, 145 P. 61 y demás casos citados en el de *Rosario* v. *Cuevas.*

La segunda cuestión que debemos considerar y resolver es la siguiente: ¿Es la Ley núm. 41 de 1941 de tal modo inconsistente e irreconciliable con la de Servicio Civil, que estemos obligados a sostener como sostuvo la corte inferior, que la primera suspendió las garantías que la segunda confiere a los empleados del Departamento de Hacienda que, como el peticionario, habían adquirido el *status* de empleados permanentes dentro del Servicio Civil Clasificado?

Ya hemos resuelto que el cargo que ocupaba el peticionario no fué abolido por la Ley núm. 41 de 1941. Y en consonancia con esa resolución tendremos que resolver que el Tesorero no está autorizado para despojar al peticionario de su empleo, a menos que lleguemos a la conclusión de que el propósito e intención del legislador fué colocar a los empleados del Departamento de Hacienda fuera de la protección de la Ley del Servicio Civil, dejándolos sujetos a ser trasladados, ascendidos, degradados o destituídos a voluntad o capricho del Tesorero de Puerto Rico.

En defensa de sus actuaciones, el Tesorero sostiene que las disposiciones del artículo 1 de la Ley núm. 41 de 1941 le autorizan, no obstante las disposiciones de la Ley de Servicio Civil, para ordenar el traslado del peticionario del

puesto permanente que ocupaba a otro temporero, siempre que éste tenga el mismo sueldo que el permanente.

Las disposiciones estatutarias invocadas por el Tesorero leen, en lo que es pertinente, así:

"*Disponiéndose,* que en cuanto a la División Legal se refiere, los miembros y personal que sean nombrados por el Tesorero de Puerto Rico, lo serán con carácter independiente y sin limitación alguna que pueda surgir de la Ley de Servicio Civil de Puerto Rico;
" .    .    .    .    .    .    .    .    .    .    .

"*Disponiéndose,* que en cuanto a los Negociados de Contaduría General y de la Tasación de la Propiedad se refiere, las plazas relacionadas en esta Ley serán cubiertas por nombramientos hechos por el Tesorero con todos los derechos de empleados permanentes, hasta tanto la Comisión de Servicio Civil haga la debida clasificación de dichas plazas y prepare exámenes para que las mismas sean cubiertas; *Disponiéndose, además,* que todos los empleados que actualmente están desempeñando un cargo en el Negociado de Cuentas y Oficina del Pagador, en el Negociado de Hacienda Municipal, y en la Sección de Tasaciones del Negociado de Contribuciones sobre la Propiedad, seguirán prestando servicios dentro del Departamento, con una compensación igual o mayor a la que reciben ahora a virtud del presupuesto actual, quedando el Tesorero de Puerto Rico facultado para clasificar y determinar las plazas a que serán asignados; *Disponiéndose, además,* que las plazas de nueva creación relacionadas con esta Ley serán cubiertas por nombramientos hechos por el Tesorero de Puerto Rico con todos los derechos de empleados permanentes, hasta tanto la Comisión de Servicio Civil haga la debida clasificación de dichas plazas y prepare exámenes para que las mismas sean cubiertas; *Y disponiéndose, además,* que todos los empleados que actualmente están desempeñando un cargo en el Departamento de Hacienda, seguirán prestando servicios dentro del Departamento, con una compensación igual o mayor a la que reciben ahora a virtud del presupuesto actual, quedando el Tesorero facultado para clasificar y determinar las plazas a que serán asignados."

Las disposiciones transcritas revelan con toda claridad el propósito firme y decidido del legislador de mantener en toda su fuerza y vigor el espíritu de justicia que inspira la Ley de Servicio Civil y las garantías que ella ofrece a los que sirven con integridad y competencia a la comunidad.

Empieza el estatuto haciendo una clara y específica excepción del personal de la División Legal, al disponer que el mismo podrá ser nombrado libremente. El legislador ha expresado claramente su deseo de que el personal de dicha división no debe considerarse como incluído dentro del Servicio Civil.

Los dos disponiéndoses referentes a los Negociados de Contaduría General y de Tasación de la Propiedad y a las plazas de nueva creación son una reafirmación de la ley y de la práctica que se sigue para cubrir puestos de nueva creación. El Tesorero hace el nombramiento; y la persona nombrada ocupa el cargo con carácter permanente hasta que la Comisión de Servicio Civil clasifique la plaza y prepare los exámenes que deberán ser aprobados para poder ocuparla permanentemente.

Es en el último disponiéndose que se apoya el Tesorero para sostener que él está facultado para trasladar al peticionario a cualquier otro puesto dentro del Departamento de Hacienda, con la única limitación de que el nuevo puesto deberá tener una compensación igual o mayor que la que recibía el peticionario como Oficinista y Contador en la División de Embargos, Cobros y Reclamaciones.

Ya hemos visto por el examen de la evidencia que el puesto que ocupaba y que ahora reclama el peticionario no es de nueva creación. Lo ha ocupado el peticionario, con variaciones en la denominación y en la compensación, pero siempre con las mismas obligaciones, desde 1935 hasta el momento de su alegada destitución ilegal en abril 30 de 1942.

Repetimos que la Legislatura está facultada para abolir cualquier plaza del servicio público, y que igualmente lo está para derogar la Ley de Servicio Civil. En el caso de autos la plaza en controversia no ha sido abolida. Y la Ley de Servicio Civil, cuyo propósito fundamental es asegurar la permanencia en el servicio público de los funcionarios fieles y competentes, sin dejarlos expuestos a las vicisitudes de las luchas políticas, continúa en toda su fuerza y vigor.

La corte inferior ha llegado erróneamente a la conclusión de que el último disponiéndose, supra, contiene una derogación o suspensión implícita de la Ley de Servicio Civil. El error consiste en haber creído que porque al Tesorero se le faculta para clasificar y determinar las plazas a que serán asignados los empleados en el Departamento de Hacienda, siempre que se les asigne a una plaza con compensación igual a la de la que antes ocupaban, esa facultad lleva implícita la de suspender las garantías y la protección que la Ley de Servicio Civil concede a los empleados que han adquirido un *status* permanente dentro del Servicio Civil Clasificado.

La Legislatura puede abolir un cargo determinado o excluirlo del Servicio Civil. Pero mientras el cargo exista y esté ocupado con *status* permanente por una persona, no puede privar a esa persona del derecho adquirido al amparo de la Ley de Servicio Civil. No encontramos nada en el lenguaje del citado disponiéndose que nos autorice a presumir que la Legislatura tuvo la intención de autorizar al Tesorero de Puerto Rico para hacer lo que ella no podía directamente hacer.

No tenemos duda alguna y así lo resolvemos que el Tesorero está facultado para trasladar a cualquier empleado del Departamento del cargo que ocupa dentro del Servicio Civil Clasificado a otro cargo de igual categoría y sueldo, siempre que en el nuevo puesto se le reconozca el *status* permanente que adquirió al aprobar los exámenes.

Las enmiendas tácitas no son favorecidas y menos deben serlo cuando al aplicarlas se lesionan derechos adquiridos al amparo de una ley anterior que, continúa en vigor. El puesto que ocupaba el peticionario no ha sido abolido ni excluído del Servicio Civil. Si sostuviésemos que el Tesorero puede asignar al peticionario a otro cargo, sin *status* permanente, la Ley de Servicio Civil se convertiría en una farsa.

*La sentencia recurrida debe ser revocada y en su lugar dictarse otra de acuerdo con la súplica de la demanda.*

El Juez Asociado Sr. De Jesús se inhibió.