José Cantellops Vega, demandante y apelante, *v.* Antonio Fernós Isern, Comisionado de Sanidad, demandado y apelado.

Núm. 9066—*Sometido:* Mayo 23, 1945. *Resuelto:* Junio 4, 1945.

*R. Cuevas Zequeira,* abogado del apelante; *Hon. Procurador General Interino Jesús A. González y A. D. Marchand Paz, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Las alegaciones esenciales de la solicitud de *mandamus* radicada en este caso son, en síntesis, como sigue:

El peticionario, José Cantellops Vega, desempeñó hasta el 30 de junio de 1942 el cargo de Jefe del negociado de Inspección General de Construcciones y Plomería, incluído en el Servicio Civil Clasificado, con un sueldo anual de 3,000. Al aprobar la Ley de Presupuesto que empezó a regir el 1°. de julio de 1942, la legislatura alteró el nombre del cargo que ocupaba el peticionario, designándolo con el de "Inspector General de Construcciones y Plomería" con los mismos deberes, atribuciones y remuneración del cargo anterior.

En septiembre 10 de 1942, el Comisionado demandado, en contestación a una solicitud de licencia que le dirigiera el peticionario, informó a éste que "de acuerdo con los records de esta Oficina, Ud. no ocupa cargo alguno en este Departamento desde junio 30, 1942, en que por acción legislativa cesó usted en el cargo de Jefe del Negociado de Inspección General de Construcciones y Plomería".

Alega el peticionario, que el efecto de la comunicación del demandado fué destituirle de su empleo, sin formularle cargo alguno; que el demandado le ha impedido continuar en el desempeño de sus funciones y se ha negado a reponerle en su cargo y a ordenar que le sean pagados sus sueldos, desde julio 1, 1942 hasta octubre 28, 1943, fecha de la solicitud.

Expedido el auto en forma alternativa, compareció el demandado y radicó su contestación, alegando: (*a*) que la petición no aduce hechos suficientes para constituir una causa de acción; (*b*) que el demandante no era un empleado comprendido en el servicio clasificado, porque ni tomó ni aprobó

los exámenes de libre oposición requeridos por la ley, y era solamente un empleado temporero, a virtud de nombramiento temporero que le fué extendido el 1°. de julio de 1931; (c) que la Resolución aprobada por la Comisión de Servicio Civil, de febrero 26 de 1932, mediante la cual se concedió el *status* de permanente a todos los empleados que ocupaban cargos temporeros al entrar en vigor la Ley de Servicio Civil, fué declarada nula e ineficaz por el Tribunal Supremo de Puerto Rico en los casos de *Matos* v. *Veve, Márshal,* 46 D.P.R. 356 y *García* v. *Cordero,* 62 D.P.R. 315; y (d) que el cargo que ocupaba el demandante fué suprimido por la legislatura en la Ley de Presupuesto de 1942 y en su lugar se creó un cargo nuevo con nombre, atribuciones y deberes distintos de los del cargo anterior.

La Corte de Distrito, después de examinar la evidencia aducida en la vista del caso, llegó a las siguientes conclusiones:

1. El peticionario fué un empleado temporero hasta febrero 26, 1932 en que la Comisión de Servicio Civil, de acuerdo con una opinión del Procurador General de febrero 19, 1932 lo clasificó como un empleado permanente.

2. Que en agosto 6, 1931, el peticionario aprobó un examen de Maestro Plomero con un promedio de 80.50 por ciento.

3. Que en junio 12, 1942 el peticionario aprobó otro examen de Ingeniero Sanitario, con un promedio de 92.10 por ciento.

4. Que el status de permanente adquirido por el peticionario a virtud de la citada opinión del Procurador General carece de efecto legal alguno, después de lo resuelto en *Matos* v. *Veve* y en *García* v. *Cordero,* supra.

5. Que no hay evidencia alguna de que el peticionario haya adquirido un status permanente a virtud de los exámenes aprobados por el mismo.

Basándose en las anteriores conclusiones, la corte inferior dictó sentencia desestimando la demanda e imponiendo las costas al peticionario.

En apoyo de su recurso el peticionario alega que la corte inferior erró: (1) al no resolver el punto en controversia relacionado con el cambio establecido en la nomenclatura del cargo que desempeñara el apelante; (b) al resolver que el apelante no estaba incluído en el Servicio Civil Clasificado y pudo ser destituído sin previa formulación de cargos; y (c) al desestimar la demanda.

La primera cuestión que debemos resolver es: ¿Era el peticionario, en junio 30 de 1942, fecha en que fué separado de su cargo, un empleado comprendido dentro del Servicio Civil Clasificado, con derecho a no ser separado o despedido de su empleo, salvo por causas justificadas y previa formulación de cargos, y no antes de dársele una oportunidad para ser oído en su propia defensa, de acuerdo con lo dispuesto por la sección 28 de la Ley de Servicio Civil?

Para poder contestar la pregunta que hemos formulado, es necesario que hagamos un resumen de la prueba.

Para sostener su alegación de que él era un empleado permanente, el peticionario ofreció la prueba siguiente:

*Exhibit Núm. 1* (demandante). Hoja de Servicio de José Cantellops, copiada de los Archivos de la Comisión y certificada por el Secretario de la Comisión de Servicio Civil, de la cual aparece que el peticionario ocupó varios cargos en el Departamento de Sanidad, desde julio 2, 1926 hasta agosto 10, 1931, con carácter de empleado temporero; que en febrero 26 de 1932 la Comisión de Servicio Civil le reconoció el status de empleado permanente, por virtud de una opinión del Attorney General de fecha febrero 19, 1932; y que en julio 1, 1937 Cantellops ocupaba el cargo que ahora reclama, con sueldo de $3,000 al año y con carácter permanente.

*Exhibit Núm. 2* (demandante). Certificación del Secretario de la Comisión de Servicio Civil, haciendo constar que

en los archivos de la Comisión consta que José Cantellops Vega aprobó los siguientes exámenes:

Maestro Plomero, en agosto 6, 1931, promedio 80.50 por ciento.

Ingeniero Sanitario, en junio 12, 1942, promedio 92.10 por ciento.

El peticionario, José Cantellops Vega, declaró: Que ocupó la plaza de Inspector General de Construcciones y Plomería desde que la misma fué creada en 1931; que la plaza ha sido designada con distintos nombres; que para ocupar dicha plaza sufrió dos exámenes en el Servicio Civil; que el Comisionado Dr. Fernós le exigió que se examinara para Maestro Plomero, se examinó y pasó los exámenes en 1931; que en junio 22 de 1942, el Comisionado Dr. Berríos Berdecía quiso ascenderlo a otra plaza y entonces pasó los exámenes para Ingeniero Sanitario, con promedio de 92.10; que fué separado de su empleo sin que se le formularan cargos y sin concederle audiencia; que los deberes que tenía el Jefe del Negociado de Inspección General de Construcciones y Plomería son los mismos que ahora tiene el llamado Inspector General de Construcciones y Plomería, pasando la mitad del tiempo en la oficina y la otra mitad en viajes por la Isla inspeccionando las construcciones.

El Sr. Nicolás Durán, Secretario de la Comisión de Servicio Civil, presentó la hoja de servicio (Exhibit 1), de la cual no aparece que el peticionario haya sido destituído; y la certificación de los exámenes aprobados por Cantellops (Exhibit 2). Declaró, que a virtud de dichos exámenes Cantellops tenía elegibilidad para el cargo que estaba ocupando, y que se deduce que era elegible para dicho cargo desde el momento que está ocupándolo con carácter permanente; que no tiene conocimiento de que los deberes del cargo en cuestión hubiesen sido cambiados por la Comisión, después de la aprobación del Presupuesto de 1942–43, en el cual se cambió el nombre del cargo; que en la hoja de servicio no apa-

rece que se haya comunicado a la Comisión la abolición del cargo por algún cambio legislativo; que de acuerdo con los records que tiene bajo su custodia el señor Cantellops es un empleado permanente en el puesto que ocupaba; que de acuerdo con el récord, el peticionario adquirió permanencia en el puesto a virtud de una opinión del Attorney General, ratificada por la Comisión; que no aparece en la hoja de servicio constancia de los exámenes tomados por el peticionario, constando solamente en la certificación expedida por el declarante.

Declaró el senador Celestino Iriarte: Que en los últimos días de la sesión legislativa, en abril de 1942, encontrándose el declarante en un Comité de Conferencias discutiendo sobre las numerosas plazas que habían sido eliminadas del proyecto de Presupuesto, entre ellas la que ocupaba el peticionario Cantellops, se le acercó el demandado Dr. Antonio Fernós Isern y le indicó que lo que debía hacer para conseguir que la plaza de Cantellops fuese restablecida era ir a ver a Muñoz Marín (Presidente del Senado) y pedirle que la pusiera en el presupuesto, no como Jefe de Negociado y sí como Inspector General de Construcciones y Plomería, con el mismo sueldo del cargo anterior; que fueron juntos, Fernós e Iriarte a ver al senador Muñoz Marín, quien accedió a que la plaza fuera restituída con el nombre sugerido por el Dr. Fernós; y que entonces fueron los dos a la oficina del senador Susoni, para informarle sobre lo acordado con el Presidente del Senado.

Llamado por el demandado, volvió a declarar el Sr. Nicolás Durán, Secretario de la Comisión de Servicio Civil, y dijo: que Cantellops aprobó el examen de Ingeniero Sanitario en junio 12 de 1942; que no sabe por qué no se incluyó ese examen en su hoja de servicio, pero que de acuerdo con ésta él ocupa el cargo permanentemente; que desde antes del examen lo venía ocupando con carácter permanente. Repreguntado, contestó: Que Cantellops sufrió dos exáme-

nes; que en el rango que él tenía no hay ningún examen de mayor capacidad que el que él tomó y aprobó, que en la hoja de servicio no aparecen las cualificaciones posteriores a 1937, porque no se había enviado una terna de elegibles; y que es por eso que sólo aparece la resolución de la Comisión dándole el carácter de permanente. Preguntado: "¿Por qué no se llenó la hoja de servicio, en relación con el peticionario, del 1937 a 1942?", contestó: "Puede ser un error del empleado a cargo de eso o sea que no se cursó ningún impreso 218. Si no aparece ningún asiento en la hoja de servicio, quiere decir o que no ha pasado ningún impreso número 218 o que ha habido algún error, pero yo certifico hasta la fecha en que está expedida la certificación".

No estamos conformes con la apreciación que de la evidencia hiciera la corte sentenciadora. Su conclusión de que no hay evidencia alguna de que el peticionario haya adquirido un status permanente a virtud de los exámenes aprobados por el mismo, es claramente errónea.

De acuerdo con la hoja de servicio, Exhibit 1 del demandante, en diciembre 6 de 1930 el peticionario ocupaba con carácter temporero, el cargo de Inspector Especial de Construcciones, que era un cargo comprendido dentro del Servicio Civil Clasificado. En agosto 6 de 1931, por habérselo exigido el Comisionado de Sanidad, tomó y aprobó el examen de Maestro Plomero, mediante el cual había de adquirir permanencia en la plaza que entonces ocupaba como temporero. La aprobación de ese examen por el peticionario, por error, descuido o negligencia de los empleados de la Comisión de Servicio Civil, no se hizo constar en su hoja de servicios. En los records de la Comisión consta—y el demandado no lo ha negado—que el peticionario tomó y aprobó dicho examen.

El examen aprobado por el peticionario en agosto 6 de 1931 y el hecho de que tanto el Comisionado de Sanidad como la Comisión de Servicio Civil permitiesen al peticio-

nario ocupar el cargo de Jefe del Negociado de Inspección General de Construcciones y Plomería, desde agosto de 1931 hasta el 30 de junio de 1942, fecha en que fué destituído, nos llevan a la inescapable conclusión de que el Comisionado y la Comisión de Servicio Civil reconocieron que el peticionario había adquirido, mediante el referido examen, el status de un empleado permanente del Servicio Civil Clasificado, pues de no ser así, tendríamos que llegar a la conclusión alternativa, o sea que dichos funcionarios, a sabiendas o por negligencia mantuvieron al peticionario durante más de once años como empleado temporero en una plaza comprendida en el Servicio Civil Clasificado y que debía ser cubierta mediante examen, infringiendo así las disposiciones de la sección 24 de la Ley de Servicio Civil al efecto de que los nombramientos temporeros continuarán solamente hasta que se establezca el registro de elegibles y que ''en ningún caso deberán prolongarse tales nombramientos por más de cuatro meses, en total, ni se hará más de un nombramiento provisional a favor de una misma persona''. Como hecho adicional que refuerza la conclusión a que hemos llegado, haremos constar que la anotación de ''permanente'' que aparece en la hoja de servicio del peticionario fué hecha en marzo 10 de 1931, o sea cuatro días después de haber el peticionario aprobado el examen que hubo de tomar por orden de su jefe, el Comisionado de Sanidad.

Es un hecho no controvertido, que en junio de 1942, estando aún ocupando su cargo de Jefe del Negociado de Inspección General de Construcciones, el peticionario aprobó los exámenes para Ingeniero Sanitario. Y ya sabemos por la declaración del Secretario de la Comisión, que en el rango que ocupaba el peticionario en esa fecha no hay ningún examen mayor que el que él tomó y aprobó.

La corte inferior consideró como muy significativo el hecho de que en la hoja de servicio del peticionario no se hiciera constar que éste hubiese adquirido el status de em-

pleado permanente, a virtud del primer examen. Y tomando como base ese solo hecho, llegó a la conclusión, a nuestro jucio errónea, de que el peticionario siempre conservó el status de empleado temporero. El hecho de que el peticionario tomó y aprobó los dos exámenes quedó claramente establecido por la declaración del funcionario que tiene bajo su custodia los records de la Comisión; y ese mismo funcionario, declarando como testigo del demandado, admitió que el no haberse anotado en la hoja de servicio los exámenes aprobados por el peticionario, se debió a descuido o error del empleado de la Comisión encargado de hacer esas anotaciones. Lo que da elegibilidad para y permanencia en un cargo comprendido en el Servicio Civil Clasificado, es la aprobación del examen y no la anotación que del mismo se haga en la hoja de servicio del empleado. Sería a todas luces injusto el hacer responsable al empleado que aprobó su examen, de la negligencia o descuido de los empleados de la Comisión al no hacer la anotación en la hoja de servicio.

En la contestación del demandado y en la opinión de la corte inferior, se ha hecho referencia a una opinión del Attorney General, la cual, según se alega, sirvió de base a una resolución de la Comisión reconociendo al peticionario status permanente en el Servicio Civil Clasificado. Nos abstendremos de discutir los méritos de la citada resolución, por dos razones. La primera, porque dicha resolución no figura en los autos y desconocemos sus disposiciones; y la segunda, porque el peticionario basa su alegación de status permanente dentro del servicio clasificado en su aprobación de los dos exámenes y no en resolución alguna de la Comisión de Servicio Civil.

Por las razones expuestas, opinamos que en junio 30 de 1942, fecha en que fué separado de su empleo, el peticionario había adquirido status permanente en el Servicio Civil Clasificado, con derecho a la protección prescrita por la sec-

ción 28 de la Ley de Servicio Civil. La corte inferior erró al resolver lo contrario.

■■■ La segunda cuestión a resolver es si el cargo que ocupó el peticionario hasta junio 30 de 1942, fué abolido por la Legislatura o si se trata de un mero cambio de nombre para llevar a efecto la remoción de un empleado público, en violación de las claras disposiciones y del espíritu de la Ley de Servicio Civil.

La experiencia nos ha demostrado la frecuencia con que se recurre al reprochable procedimiento de cambiarle el nombre a un cargo público, para echar de él al que lo desempeña bajo la protección de la Ley de Servicio Civil, sin formularle cargos y sin darle una oportunidad de defenderse. Si los tribunales de justicia se declarasen impotentes para impedir la consumación de esas tácticas, la Ley de Servicio Civil se convertiría en una farsa y los empleados más antiguos, más competentes y más fieles en el cumplimiento de sus deberes quedarían expuestos a los vaivenes de la política y a encontrarse el día menos pensado sin empleo y sin derecho a retiro. Esta Corte Suprema se ha sentido siempre obligada a proteger a aquellos empleados públicos a quienes se ha tratado de remover injustamente de sus cargos. En *Rosario* v. *Cuevas, Comisionado*, 60 D.P.R. 470, al sostener el derecho de la peticionaria a ocupar el cargo, no obstante el nuevo nombre con que se le designara en el nuevo presupuesto, dijimos (pág. 476):

"La jurisprudencia sostiene que un mero cambio de nombre no es por sí solo suficiente para crear un nuevo cargo y abolir el que existía anteriormente. Cuando se suprime un cargo y en seguida se crea otro bajo una nueva designación, pero con iguales deberes que el anterior, las cortes amparan al funcionario perjudicado, por entender que el cambio se ha hecho con el propósito de evadir las leyes del Servicio Civil. (Citas)."

En *Cruz Andréu* v. *Buscaglia, Tesorero*, 61 D.P.R. 737, 746, resolvimos que cualquier cargo público comprendido

dentro del Servicio Civil Clasificado puede ser abolido de buena fe por la Legislatura, pero que "la Ley de Servicio Civil no puede ser evadida o ignorada mediante una ficticia o pretendida abolición de un cargo, como por ejemplo cuando se hace una mera alteración en su denominación, se separa del mismo al incumbente y se nombra en su lugar a otra persona para cumplir substancialmente las mismas obligaciones." Véase: *Colón Medina* v. *Iglesias, Jr., Comisionado*, 64 D.P.R. 851.

En el caso de autos, como en el de *Cruz Andréu*, supra, el cargo que ocupaba el peticionario no fué abolido. De acuerdo con lo declarado por el peticionario y por el Senador Iriarte, sin que el demandado hiciera el menor esfuerzo para contradecirles, el cargo que aparece en el Presupuesto de 1942–43 bajo la denominación de "Inspector General de Construcciones y Plomería", tiene los mismos deberes, atribuciones y remuneración que correspondían al cargo que hasta el día antes de empezar a regir dicho presupuesto ocupó el peticionario con carácter permanente, según hemos resuelto. La prueba demuestra claramente que se trata de un mero cambio de nombre para simular la abolición del cargo que ocupaba el peticionario y poder así separarlo del servicio, sin causa justificada. Siendo ello así, el peticionario tiene derecho a ser repuesto en su empleo.

*La sentencia recurrida debe ser revocada y en su lugar se dictará otra declarando con lugar la demanda y ordenando la inmediata reposición del peticionario en su empleo y la aprobación de las nóminas correspondientes a los sueldos que el peticionario tenía derecho a recibir, desde la fecha de su separación hasta la fecha en que se le reponga en su cargo, con las costas a cargo del demandado.*

EN RECONSIDERACION

*Sometido:* Noviembre 15, 1945. *Resuelto:* Marzo 15, 1946.

E<small>L</small> J<small>UEZ</small> P<small>RESIDENTE</small> S<small>EÑOR</small> T<small>RAVIESO</small> emitió la opinión del tribunal.

El día 4 de junio de 1945 dictamos sentencia en el caso del epígrafe revocando la sentencia apelada y declarando con lugar la demanda interpuesta por el demandante y apelante José Cantellops Vega, disponiendo en su consecuencia la inmediata reposición del demandante en el puesto que desempeñaba en el Departamento de Sanidad de la isla de Puerto Rico, y la aprobación de las nóminas correspondientes a los sueldos a que éste tenía derecho a percibir desde la fecha de su separación hasta la de su reposición en su cargo.

El demandado y apelado nos pide que reconsideremos nuestro fallo, por los fundamentos que consignamos a continuación:

■ Que dicha sentencia debe ser reconsiderada en el sentido de confirmar la recurrida, toda vez que la opinión

que la fundamenta se basa, erróneamente, primero, en que en junio 30, 1942, fecha en que fué separado de su empleo, el peticionario y apelante había adquirido status permanente en el Servicio Civil Clasificado, con derecho a la protección prescrita por la sección 28 de la Ley de Servicio Civil, porque la mera aprobación de un examen que exija el poder nominador a un empleado temporero que ocupe un cargo comprendido en el Servicio Civil Clasificado no le da el derecho a permanencia en dicho cargo, y sí únicamente a figurar en la lista de elegibles que para ese cargo prepare al efecto la Comisión de Servicio Civil y a figurar, si su calificación lo acredita, en la terna que certifique dicha Comisión al jefe nominador correspondiente; y, segundo, en que el cargo que ocupaba el peticionario y apelante en el Departamento de Sanidad no fué abolido por la ley general de presupuesto de 1942. Termina el demandado y apelado solicitando que, de no haber lugar a dicha reconsideración, se modifique la sentencia en el sentido siguiente: (a) decretando que el peticionario tenía derecho a reposición en el cargo de Inspector General de Construcciones y Plomería del Departamento de Sanidad hasta el 30 de junio de 1943 en que dicho cargo tuvo existencia legal, o disponiendo que la ordenada reposición esté condicionada a la existencia del cargo; (b) disponiendo que la ordenada aprobación de las nóminas relativas a los sueldos que el peticionario tenía derecho a recibir lo sea conforme a la disposición (a) precedente; y (c) eliminar la imposición de costas al demandado y apelado por no haber existido temeridad de su parte.

La teoría del demandado y apelado en este caso descansa exclusivamente sobre las alegaciones de que el demandante y apelante no es, ni era en la fecha en que cesó en su cargo de Jefe del Negociado de Inspección General de Construcciones y Plomería del Departamento de Sanidad, un empleado comprendido en el Servicio Civil Clasificado, porque nunca tomó y aprobó los exámenes de libre oposición que exige la

Ley; y que el cargo que ocupaba el demandante y apelante fué abolido por la Ley General de Presupuesto correspondiente al año económico 1942–1943, y que también fué suprimido por la Legislatura Insular en la Ley General de Presupuesto del año 1943–1944.

En otras palabras, el único reparo que puso el apelado al apelante para que éste pudiera estar comprendido dentro del Servicio Civil Clasificado fué solamente el incumplimiento del previo requisito de la aprobación de un examen. El apelante probó satisfactoriamente haber cumplido con este requisito previo. Su prueba, en cuanto a este extremo, no fué controvertida en forma alguna. Quedó también probado de manera incontrovertible que el apelante desempeñó el cargo de Jefe del Negociado de Inspección General de Construcciones y Plomería desde agosto de 1931 hasta el 30 de junio de 1942, fecha en que fuera destituído.

No podemos aceptar que un nombramiento de temporero pudiese prolongarse por más de cuatro meses de acuerdo con las disposiciones de la sección 24 de la Ley de Servicio Civil, y que un funcionario bajo tal nombramiento estuviese desempeñando su cargo por once años. Podría en este caso argüirse que debido a la opinión que rindiera el Hon. Attorney General de Puerto Rico, con fecha 19 de febrero de 1932, en relación con la Ley de Servicio Civil de 11 de mayo de 1931, la Comisión de Servicio Civil fuera inducida a error al considerar, mediante resolución, al peticionario como empleado con status permanente dentro del Servicio Civil Clasificado, y que por ello asimismo fuese inducido a error el Comisionado de Sanidad o sea la parte demandada; pero ¿podría alegarse tal motivo de error después de este Tribunal haber declarado nula e ineficaz la referida resolución según consta del caso de *Matos* v. *Veve, Márshal,* 46 D.P.R. 356, resuelto el 16 de marzo de 1934? ¿Por qué si el status del peticionario no era el de permanente no se decretó su cesantía entonces con vista de la referida decisión de este

Tribunal? No se hizo tal cosa, y por el contrario siguió ocupando el cargo discutido por varios años más, percibiendo por sus servicios el correspondiente pago mensual, para lo cual y de acuerdo con la Ley, nóminas fueron remitidas mensualmente en las cuales figuraba Cantellops, por el Departamento de Sanidad al Auditor y Tesorero de Puerto Rico para su aprobación y orden de pago, nóminas que fueron expedidas con estricta observancia de la sección 26 de la Ley de Servicio Civil que dispone que la lista de pagos, comprobante o cuenta contendrá los nombres de las personas a quienes ha de hacerse el pago, así como indicará la suma a pagarse y también una aseveración de que se han rendido tales servicios juntamente con la certificación de la Comisión de Servicio Civil acreditativa de que las personas nombradas han estado empleadas en el servicio del Gobierno Insular de Puerto Rico, a virtud de esta Ley y de las reglas dictadas conforme a la misma.

Considerados todos los hechos y circunstancias especiales que concurren en este caso, y, especialmente, que tanto el Comisionado de Sanidad como la Comisión de Servicio Civil, fuere cual fuere el motivo o causa, consideraron y reconocieron al Sr. Cantellops, por más de once años, como un funcionario permanente del Departamento de Sanidad, no es posible llegar a otra conclusión, compatible con la justicia y la equidad, que no sea la de que el peticionario, para la fecha en que fué separado de su empleo, en junio 30 de 1942, ya había adquirido un status permanente en el Servicio Civil Clasificado con derecho a la protección prescrita por la sección 28 de la Ley de Servicio Civil.

Conocemos los preceptos de la Ley de Servicio Civil y sabemos muy bien que la aprobación de un examen solamente da derecho al examinado a figurar en la lista de elegibles de la Comisión de Servicio Civil y, luego, a ser incluído si su calificación lo acredita, en una terna solicitada

por el poder nominador para de ser seleccionado por éste, recibir un nombramiento probatorio por el término de cuatro meses y que de ser satisfactorios sus servicios durante este período de prueba, el funcionario o empleado adquirirá un status permanente dentro del Servicio Civil Clasificado; pero el apelado y demandado en este caso concretó toda su contención al hecho exclusivo de que el Sr. Cantellops no había tomado ni aprobado examen alguno para ganar el status permanente como empleado público en el Servicio Civil Clasificado, lo que no probó, y por esto y los demás fundamentos de nuestra opinión, fallamos en contra de sus pretensiones. El apelado no ha tenido en cuenta los preceptos del art. 464, inciso 14, del Código de Enjuiciamiento Civil, Estatutos Revisados de 1941, que establece la presunción controvertible *de que una persona en posesión de un cargo público fué elegida o nombrada para dicho cargo, en debida forma,* e incurre en el error de pretender que el Sr. Cantellops pruebe la validez o legalidad de su nombramiento. Éste solamente tenía que probar, como probó, que estaba en posesión del cargo en discusión sin que esta prueba fuera controvertida. Incumbía al apelado destruir esta presunción y no lo hizo; debió haber alegado en su contestación al recurso de *mandamus* y probado que Cantellops no tomó ni aprobó los exámenes del Servicio Civil del cargo que ocupaba; o que de haber tomado y aprobado dichos exámenes no fué incluído su nombre en la terna que solicitara al efecto el poder nominador, o que de haberlo sido, dicho poder nominador no lo seleccionó para darle un nombramiento probatorio por el término de cuatro meses, o que de haber recibido tal nombramiento, no pudo conseguir su status permanente por no ser satisfactorios sus servicios. Ninguna de estas circunstancias aparece de las alegaciones del demandado ni de la prueba aducida para destruir la presunción que asiste al demandante, a excepción de la alegación de no haber tomado y aprobado sus exámenes para cualificar como

empleado permanente, la que no fué probada. El peticionario probó que había tomado y aprobado los exámenes.(¹)

No se ha aducido ni hemos podido encontrar razón alguna para que alteremos nuestra conclusión de que el puesto que ocupaba el peticionario en junio 30 de 1942 no fué abolido por la Ley de Presupuesto para el año fiscal 1942–1943; y que por lo tanto el peticionario Cantellops tenía derecho a ocupar dicho puesto durante el mencionado año fiscal y a percibir por sus servicios los sueldos fijados por la Ley de Presupuesto. El propio demandado así lo reconoce cuando propone en su moción de reconsideración que se modifique la sentencia en la forma siguiente: "(a) decretando que el peticionario tenía derecho a reposición en el cargo . . . hasta el 30 de junio de 1943 en que dicho cargo tuvo existencia legal"; y "(b) disponiendo que la ordenada aprobación de las nóminas relativas a los sueldos que el peticionario tenía derecho a recibir lo sea conforme a la disposición (a) precedente".

El peticionario y el demandado han descansado en la Ley de Presupuesto para el año 1943–1944; el primero, para sostener que el cargo en controversia continuó existiendo por virtud de dicha Ley; y el segundo, para demostrar que el cargo fué expresamente abolido para dicho año fiscal. No es posible determinar, por la simple lectura de dicho presupuesto, a cuál de las dos partes asiste la razón. La duda solamente puede ser disipada mediante la práctica de la prueba que las partes puedan aducir para tratar de sostener sus respectivas contenciones.

(¹)El caso de *Rodríguez* v. *Buscaglia*, Tes., 63 D.P.R. 490, aun cuando presenta hechos similares a los del caso de autos, se distingue de éste en que el peticionario Rodríguez fué separado del cargo que ocupaba, año y medio después de haber sido nombrado, por haberse hecho el nombramiento mediante ascenso sin examen de libre oposición, apareciendo de la prueba que Rodríguez ocupaba el sexto puesto en la lista de elegibles. En el presente caso, a Cantellops se le separó del cargo después de haberlo ocupado sin interrupción por más de once años; y de la prueba no resulta que en la época en que se le nombró, después de haber tomado y aprobado el examen, existieran otras personas con derecho a que se les hiciera figurar en una terna de elegibles.

*Por las razones expuestas, se declara con lugar la moción de reconsideración, se dejará sin efecto la sentencia recurrida y se devolverá el caso a la corte inferior con el único propósito de que ante ella se practique prueba en cuanto a la alegada existencia del cargo en controversia y en cuanto a la alegada abolición del mismo por la Ley de Presupuesto para el año fiscal 1943–1944. Si de la evidencia resultare que el cargo ya no existe, el mandamus solicitado sería improcedente y la demanda deberá en ese caso ser desestimada.*

El Juez Asociado Sr. Córdova no intervino.